draw all statements relative to the question of morphia, and let all the evidence of the physician stand for what it is worth." This ruling was correct. The witness had first stated that the plaintiff, at the time mentioned, was under the influence of morphine; that he himself had administered the morphine, and therefore knew it. Subsequently he testified that he did not know, of his own knowledge, whether he was under the influence of morphine or not, but he did not deny his former statement to the effect that he had administered morphine to the plaintiff; and therefore, in view of these contradictory statements, the court very properly held that as to which statement made by him was true was to be determined by the jury.

On the whole, we are satisfied that substantial justice was done between the parties, and that the judgment and order should be affirmed, with costs.

PATTERSON, J., concurs.   HATCH, J., concurs in result.   VAN BRUNT, P. J., dissents.

LAUGHLIN, J.  I concur on the first two grounds of the opinion, and in the result arrived at on the third ground. I think the evidence should have been stricken out, but the refusal of the court to do so does not constitute prejudicial error. The evidence was volunteered in defendant's behalf by the physician while being cross-examined to combat the theory sought to be developed by plaintiff's counsel to the effect that plaintiff, at the time of making the admissions, was suffering intense pain and did not fully comprehend what he was saying. The physician made it clear that morphine, if taken, would relieve pain, but would not affect the ability of the patient to converse intelligently.

---

(35 Misc. Rep. 69.)

### NILES v. NEW YORK CENT. & H. R. R. CO. et al.

(Supreme Court, Special Term, New York County.  May, 1901.)

1. CORPORATION—ACTION BY MINORITY STOCKHOLDER.

   A minority stockholder sued to recover damages to his stock sustained by defendant's alleged tort in forcing the foreclosure of a mortgage on the property of his corporation with the consent of a majority of the stockholders, to the end that the defendants might gain the control of the property; the foreclosure destroying the value of plaintiff's stock. *Held*, that the action was not maintainable, the injury being common to all the stockholders.

2. SAME—PARTIES.

   Where a mortgage on a corporation is foreclosed, an action to recover damages therefor on the ground that it was foreclosed in tort of the minority stockholders' interest must be brought by the corporation; and, on its refusal to sue, it is a necessary party in an action brought on behalf of all others similarly situated to procure relief.

Action by Robert L. Niles against the New York Central & Hudson River Railroad Company and others.  Demurrer to complaint sustained.

Simon Sterne and Guggenheimer, Untermyer & Marshall (Louis Marshall, of counsel), for plaintiff.

Ira A. Place (Thomas Thacher, of counsel), for defendants.

LEVENTRITT, J. I am constrained to sustain this demurrer. The pleading is certainly not deficient in equity, but, on authority, the action at law adopted by the plaintiff cannot be maintained. It is unnecessary to rehearse the facts. They have been sufficiently spread on the court records in the various proceedings heretofore instituted arising out of the same transactions for which this plaintiff seeks relief. Farmers' Loan & Trust Co. v. New York & N. R. Co., 150 N. Y. 410, 44 N. E. 1043, 34 L. R. A. 76; De Neufville v. Railroad Co., 26 C. C. A. 306, 81 Fed. 10; Oelbermann v. Railroad Co., 7 Misc. Rep. 352, 27 N. Y. Supp. 945. This is not a representative action brought by the plaintiff on behalf of himself and others similarly situated, but is purely an action at law to recover damages sustained by the plaintiff and his assignors by reason of the tortious acts of the defendants, resulting, it is claimed, in the destruction of the market value of the stock of the plaintiff and of his assignors in the New York & Northern Railway Company. The injury complained of was not done directly to the plaintiff's property. It was not an injury done peculiarly to him. He has not sustained damage individual and separable from other minority shareholders. The body corporate to which they jointly confided the protection of their interests has suffered substantial injury by the alleged improper foreclosure of the mortgage, and the resultant deprivation of its property under the decree and sale. Consequent upon this abstraction of the corporate property, there has been depreciation, if not annihilation, of share value. Restoration to the corporation of the property, or its money equivalent, will reinfuse vitality into the stock. The primal injury has been to the corporation; the consequent injury, to the body of shareholders composing it. Merely because the body injured is in this instance the minority shareholders, inasmuch as the majority, acting through the instrumentality of another corporation, is charged with the commission of the very acts against which relief is sought, does not make the injury a direct one to the minority. The majority, whether acting alone, or, as in this case, through the defendant corporation, has acted in opposition to the true interests of the injured corporation. Its acts, on the allegations of the pleading, have dissipated the corporate assets. And the right of action for the wrong inheres in the corporation itself, for the benefit of the shareholders which it represents, and, on the grounds stated, in the corporation alone. If it refuses to seek redress for any of the many reasons often met with, the shareholder may sue in a representative capacity, making it a defendant; but, so suing, the shareholder seeks a recovery, in the first instance, not directly for himself and others similarly situated, but for the corporation whose property and business condition give his shares value. Viewed in any aspect, under any form of pleading or action, the acts and omissions from which the cause of action is sought to be deduced show that it is dependent on a general injury to the cor-

poration, from which has flowed a general, uniform injury to a body of the shareholders. The authorities are quite uniform that, on the state of facts here disclosed, the wrong was done to the Northern Company alone; that it is the only party to bring this action, or, failing to do so after request, becomes a necessary party in a representative action duly instituted to obtain the relief it refuses to seek. Gardiner v. Pollard, 10 Bosw. 674; Greaves v. George, 49 How. Prac. 79; Same v. Gouge, 52 How. Prac. 58; Id., 69 N. Y. 154; Alexander v. Donohoe, 143 N. Y. 203, 38 N. E. 263; Flynn v. Railroad Co., 158 N. Y. 493, 53 N. E. 520; De Neufville v. Railroad Co., 26 C. C. A. 306, 81 Fed. 10.

That the distinction here invoked is not merely formal, but sub stantial, was pointed out in Gardiner v. Pollard, supra, where it was said:

"If the plaintiff can maintain this suit, and recover on it his aliquot part of the whole damages, he may obtain a double compensation, by means of the recovery in his suit and in one by the corporation for the same cause."

In approving this distinction, the general term of the supreme court, in Greaves v. Gouge, supra, declared it—

"To be an indispensable prerequisite that the circumstances disclosed should show injuries, individual and personal, to the claimant, as contra-distinguished from injuries to the corporation. * * * When the plaintiff is able, by the peculiar and special circumstances of his case, to disconnect himself from the general injury to the company, he then presents an independent demand for which he can recover but one redress, and for which the defendant can pay but one penalty."

The plaintiff seeks to distinguish the line of cases cited on the ground that in those there was no direct injury to the stockholders. But it is difficult to see how it is more direct here. Merely changing the form of action does not make it so. In a sense, every injury which impairs the value of property is a direct injury to that property and to the person owning it. But that is not the sense in which "direct" is here used. The injury is not direct because it affects the share values, whether of the whole issue or of a majority or minority only, through the body corporate. Whatever may be the effect of the alleged unlawful acts, they were not directed against the individual shareholders as shareholders. If they purposed an acquisition of the Northern Railway's property through the instrumentality of a forced foreclosure, the injury was first to the corporation, and through it, by the loss of assets, to the stock. The cases of Ritchie v. McMullen, 25 C. C. A. 50, 79 Fed. 522, and Walsham v. Stainton, 1 De Gex, J. & S. 678, do not bear out the construction placed upon them. In each case there was an individual wrong, —a breach of duty cast upon the managers under a specific relation of legal privity. In the former the directors were the pledgees of the plaintiff's stock, and it was held that, as to their pledgor, they could not so use their positions as directors as to depreciate the value of his stock, and that, doing so, they would become personally responsible to him for the individual wrong so inflicted. So, too, in Walsham v. Stainton there was the relation of vendor and vendee. In both cases the directors used their positions to injure particular stock. Taking the allegations of the complaint as true,

71 N.Y.S.—18

there is no doubt, under the decision of the court of appeals (Farmers' Loan & Trust Co. v. New York & N. R. Co., supra), that there has been a grievous breach of trust. But the remedy does not lie in the individual stockholder, in his individual capacity, in the form of action here sought to be asserted. The demurrer must be sustained.

Demurrer sustained.